IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

SEP 3 0 2011

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

UNITED STATES,
        Plaintiff,

v.                              **Criminal Case No: 1:11cr51**

LEO HACKETT,
ANTHONY YOUNG,
DEMETRIUS PALMER,
        Defendants.

## ORDER/REPORT AND RECOMMENDATION/OPINION

On September 1, 2011, Defendant Anthony Young ("Young"), through counsel James Zimarowski, filed a "Motion to Dismiss for Prosecutorial Delay" [Docket Entry 63]; "Motion to Suppress Statements or, in the Alterative, Request for Additional Discovery" [Docket Entry 64]; "Motion for Unredacted Discovery" [Docket Entry 65]; and "Motion to Adopt Co-Defendant's Motions" [Docket Entry 66].  On September 12, 2011, Defendant Demetrius Palmer ("Palmer"), through counsel Deanna Pennington, filed a "Motion to Dismiss for Pre-Indictment Delay" [Docket Entry 75]; "Motion to Suppress Alleged Statement" [Docket Entry 76]; and "Motion to Adopt Motions of Co-Defendants" [Docket Entry 77].  On September 12, 2011, Defendant Leo Hackett ("Hackett"), through counsel Craig Erhard, filed a "Motion to Join Co-Defendants' Motions" [Docket Entry 82].   The United States responded to Young's motions on September 12, 2011 [Docket Entries 78, 79, 80]; adopted its response as to Young's Motion regarding Palmer's Motion to Dismiss,  and responded separately to Palmer's Motion to Suppress  on September 22, 2011 [Docket Entries 87 and 88]; and adopted its response as to Hackett's joined Motions, filing a separate Response regarding Hackett's joinder in the other Defendants' Motions to Suppress [Docket Entries 91 and 92].  All pretrial motions were referred to the undersigned United States Magistrate Judge by

United States District Judge Irene M. Keeley pursuant to Orders dated September 2, 2011, and September 13, 2011.

By separate Order entered September 13, 2011, the Court previously granted all three defendants' motions to adopt all other Defendants' motions [Docket Entry 86].

On September 23, 2011, came the Defendants in person and by counsel, and also came the United States by its Assistant United States Attorney, Brandon Flower, for hearing on Defendants' motions and the United States' response thereto.

**A. Procedural History**

Defendants were indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on May 17, 2011. The six-count indictment charges all three Defendants with Conspiracy to Commit Assault Within Territorial Jurisdiction of United States (Count One) and Assault Resulting in Serious Bodily Injury–Aiding and Abetting (Count Two). It also charges Defendant Hackett with Obstruction of Justice (Count Three) and False Statement and Representation (Count Four); Defendant Young with False Statement and Representation/False Writing (Count Five); and Defendant Palmer with False Statement and Representation/False Writing (Count Six).

Arrest warrants were issued for all three defendants. Palmer was arraigned and pled "not guilty" on July 21, 2011; Young was arraigned and pled "not guilty" on August 4, 2011; and Hackett was arraigned and pled "not guilty" on August 26, 2011.

### ORDER REGARDING MOTION FOR UNREDACTED DISCOVERY

On September 1, 2011, Defendant Young filed a Motion for Unredacted Discovery [Docket Entry 65]. Defendants Palmer and Hackett joined in this motion. In their Motion, Defendants

2

correctly note that the Court previously granted the Government's Motion for Protective Order. That Order generally directed that all discovery material provided be reviewed only by Defendants, their counsel (and counsel's employees), witnesses, and experts and consultants. No copies were to be made except as necessary, and no copies were to be provided for possession of Defendants outside the presence of counsel.

Defendants assert that the Protective Order seriously impairs counsel's ability to share and discuss discovery materials with Defendants, because the discovery consists of many thousands of pages and counsel must be present in order for Defendants to even see the materials. More significantly, Defendants assert that the discovery provided by the Government is so heavily redacted as to render it virtually useless for defense preparation. It deletes all references to individuals and multiple pages are simply blanked out. Defendants therefore have no knowledge of the individuals making statements, their location, and custody status in order to interview them, nor any information to determine their affiliation and credibility.

Defendants argue this redaction, especially combined with the Court's order directing no copies be provided to Defendants themselves, significantly impairs defense preparation in this case.

Defendants therefore demand a copy of the unredacted discovery to counsel, as provided in the Protective Order or, in the alternative, a lifting of the Protective Order so that the redacted materials can be provided to Defendants to ascertain the identity of the witnesses providing evidence.

The Court first notes that nothing in the Protective Order addresses redactions. The Order only directs that hard copies of the materials not be provided to Defendants, but only reviewed by Defendants with counsel. Further, the Court has not been asked for authority to redact discovery disclosures.

3

In response, the United States concedes the discovery provided to counsel contained redactions of the names and identifying information of the inmates that provided statements, due to safety concerns. During the hearing, the United States asserted the main reason for the redaction was that the case involved a homicide in a prison, and providing the identities of inmates and the fact that they cooperated would put them in jeopardy. The Court noted, however, that the three defendants are no longer incarcerated at Hazelton or any other federal facility, and, instead, are all in State jails. The risk of other inmates from Hazelton being identified is therefore lessened to a substantial degree, if not totally. The United States stated in its response that "supplemental discovery would be provided to the defendants which omits the redactions of witnesses' names," and added that after review, the defendants could then determine if and where the witnesses are incarcerated. The United States represents to the Court that it is working diligently to accomplish its goal of providing the discovery while addressing witness safety. At the hearing the AUSA further advised he had supplemental discovery regarding the identities of witnesses which would be immediately provided to Defendants' counsel. He also advised, however, that the discovery was still redacted to some extent, only omitting irrelevant information and information deemed privileged by the BOP due to security interests. The Court noted that redaction without authority of the Court was tantamount to permitting the "fox to guard the hen house."

Upon consideration of which, the Court directed the Government to first provide the supplemental evidence to Defendants' counsel. The Government was further directed to provide a copy of the unredacted discovery to the Court, highlighted as to the parts that were redacted, and explaining (as in a privilege log required in civil cases) the reason for the redaction. The so-called privilege log is also to be served on Defendants' counsel. The Court will then review the unredacted

documents and the reasons for the redactions in camera.  After reviewing the "privilege log" Defendants will be permitted further objection, and the Government will have the opportunity to argue in support of the redactions.

Counsel then raised an issue touched upon in the motions– the fact that the Protective Order entered by this Court prevents each Defendant from having a copy of even his own alleged statements and criminal and disciplinary records.  For reasons apparent, the Court **AMENDS** the Protective Order to permit each defendant to possess a copy of <u>his own</u> statements, criminal and disciplinary records.  Defendants are not to share this information with each other.

Upon consideration of all which, Defendants' Motion for Unredacted Discovery [Docket Entry 65] is **GRANTED IN PART and DENIED IN PART**.  The United States shall immediately provide the supplemental discovery to Defendants' counsel.  Within ten (10) days of September 23, 2011 the United States shall provide to the Court unredacted discovery, highlighted to indicate what has been redacted.  The United States shall provide to the Court <u>and</u> counsel for Defendants the general nature of each redacted document and the reason(s) for its redaction.  The Court shall review the documents and reasons for redaction *in camera*, after which counsel for both parties shall be permitted to argue for continued redaction or further disclosure.

## REPORT AND RECOMMENDATION

### Motions to Dismiss Based on  Delay

Defendant Young filed a Motion to Dismiss for Prosecutorial Delay; Defendant Palmer filed a Motion to Dismiss for Pre-Indictment Delay; and all three Defendants are joined in each others' motions.

**Facts**

On or about October 14, 2006, an incident occurred at the United States Penitentiary at Hazelton, West Virginia, a Bureau of Prisons facility.  An inmate was assaulted resulting in his death.   The Indictment in this matter was returned on May 17, 2011, some four years and seven months after the incident.  None of the three defendants are charged with the inmate's death.  All three defendants were apparently witnesses to the event.  The three are charged in the Indictment with Conspiracy to Commit an Assault, Aiding and Abetting in an Assault Resulting in Serious Bodily Injury, and Providing False Statements.  All three defendants thereafter completed the sentences for which they were incarcerated at Hazelton and were released at the time of the Indictment.

**Contentions**

Defendants contend:

1.	Defendants were actually prejudiced by the 4 year, 7 month pre-indictment delay.

2.	The Government's delay was intended to get a tactical advantage over the defendants.

The United States Contends:

1.	Defendants can not show actual prejudice to their defense.

2.	Defendants can not show the United States delayed in order to gain a tactical advantage or to harass them.

**Discussion**

Defendants do not argue that the delay violates the Speedy Trial Clause of the Sixth Amendment.  If made, such an argument would fail.  In U.S. v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044(1977), the United States Supreme Court stated:

6

In <u>United States v. Marion</u>, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), this Court considered the significance, for constitutional purposes, of a lengthy preindictment delay. We held that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such delay is wholly irrelevant, since our analysis of the language, history, and purposes of the Clause persuaded us that only "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge. . . engage the particular protections of that provision. <u>Id.</u>, at 320, 92 S.Ct., at 463 . . . .

In a footnote in <u>Lovasco</u>, the Supreme Court also noted:

<u>Marion</u> also holds that Fed. Rule Crim. Proc. 48(b), which permits district courts to dismiss indictments due to preindictment or postindictment delays, is "limited to post-arrest situations." <u>404 U.S., at 319, 92 S.Ct., at 462.</u>

The Fourth Circuit has similarly held that "critical . . . to all those claims is the determination of the date of the defendant's arrest under the charges." <u>United States v. Daniels</u>, 698 F.2d 221 (4th Cir. 1983).

As already stated, Defendants do not assert the delay violates their Speedy Trial rights under the Sixth Amendment, but instead prejudiced them and deprived them of their rights under the Due Process Clause of the 5th Amendment of the United States Constitution. In the recent case <u>U.S. v. Shealey</u>, 641 F.3d 627 (4th Cir. 2011), the Fourth Circuit stated:

"[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

In <u>U.S. v. Uribe-Rios</u>, 558 F.3d 347 (4th Cir. 2009), the Fourth Circuit announced the procedure used in making the above determination:

We conduct a two-pronged inquiry to evaluate a defendant's claim that pre-indictment delay violated his right to due process. *United States v. Automated Med. Labs., Inc.,* 770 F.2d 399, 403 (4th Cir.1985). First, we ask whether the defendant has satisfied his burden of proving "actual prejudice." *Id.* Second, if that

threshold requirement is met, we consider the government's reasons for the delay, "balancing the prejudice to the defendant with the Government's justification for delay." *Id.* at 404 (citation omitted). The "basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.' " *Id.* (quoting *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)).

In U.S. v. Shealey, 641 F.3d 627 (4th Cir. 2011), the Court expressed the burden on the claimant to prove actual prejudice:

"This is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, but also that he show that any actual prejudice was substantial - - that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996)(citations omitted).

In his Motion to Dismiss, Defendant Young asserts he is prejudiced by having his liberty interests impacted by the Government's actions regarding untimely indictment and detention, and is further prejudiced in his defense by the concerted effort by the government to impair timely trial preparation through the use of protective orders and redacted discovery.  Defendant Young argues, regarding the second step of the due process claim, that the Government strategically waited until the defendants were released and back with their families before indictment to better coerce their testimony and cooperation.  "The tactical advantage the Government sought is simply to incarcerate essential witnesses to exercise the maximum pressure and tactical advantage to induce testimony and cooperation.  The government had virtually five (5) years to investigate and proceed with this matter. They chose to detain and reincarcerate potential witnesses for the purpose of inducing testimony, without first even attempting less heavy-handed means, solely as a tactical move."

In Shealey, supra, the appellant based his due process claim on the assertion that the Government delayed a superseding indictment in his own case to provide more time to secure plea

8

agreements from other defendants, thereby lessening the relative strength of his own case. The Fourth Circuit held that this theory of prejudice was largely circuitous and speculative, but that, "even assuming that constituted prejudice, it was not necessarily 'substantial' since it at best strengthened the Government's case on the margins, but did not 'meaningfully impair[]' Appellant's own case."

Not only are Young's due process claims that the Government delayed in order to "induce testimony and cooperation," even more speculative and circuitous than Shealey's, but, even if true, they appear to be more an attempt to strengthen the Government's case in which Defendant Young would be a witness (even possibly against his co-defendants), than to impair Young's own ability to defend against his own charges. Defendant argues that his ability to defend in his own trial is impaired by his loss of liberty in tandem with the limitations on discovery. The Court understands the defendants' incarceration and limits on discovery hamper somewhat the ability of counsel to meet with and discuss the discovery and strategy; however, this is true of nearly all cases where the defendant is detained pending trial, not only where Indictment has been delayed.

Young's counsel argues that the most significant prejudice to Defendants is the deprivation of their liberty interest. The Court agrees the loss of one's liberty is a serious deprivation, especially while one is still considered innocent. The Court finds, however, that Defendants' detention no more impairs their ability to defend at trial than it does any other defendant.

Upon consideration of all which, the undersigned finds Young has not met his burden of showing any prejudice was "substantial," in that it did not meaningfully impair his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.

Defendant Palmer argues he has been prejudiced by the Government's delay because, while at the time of the incident all the witnesses were housed at USP Hazelton, in the 4 1/2 years since the incident many have been moved to other penitentiaries or correctional institutions, and/or released from incarceration.   Palmer asserts that many of the witnesses' whereabouts are unknown due to the extensive redaction of the discovery provided by the Government.  Further, the memories of the witnesses that can be located "have surely begun to fade after such an extended period." Finally, Palmer, like Young, argues that the loss of his liberty interest is itself prejudice.  Palmer does not speculate as to the Government's motives for the delay, asserting that the Government has offered no explanation whatsoever.

Again, Palmer's argument, while asserting more traditional prejudice of possible loss of witnesses and fading memories, does not meet the threshold requirement under Fourth Circuit law that he  prove actual prejudice.  His claim of <u>possible</u> loss of memory of the events and loss of defense witnessed is  not only speculative, but Petitioner does not meet his burden of showing this prejudice, if any, was substantial - - that he is meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding is likely affected.

The undersigned therefore finds Defendants have not at this time met the threshold burden of proving actual prejudice.

Upon inquiry of the Court, the AUSA appearing advised that the investigation was not completed as early as Defendants speculate, but instead continued through at least 2008.  Evidence was sent to the FBI lab as late as 2008.  Witnesses were brought before Grand Juries as late as 2009. Further, personnel changes within the prosecution's office occurred during this time, and AUSA Flower was only assigned the case in October 2010, a month or so before Defendants were released

10

from custody.

The Court does not find personnel changes in the U.S. Attorney's Office an excuse for a lengthy delay in indicting Defendants. Although unnecessary to the decision, however, the undersigned further finds Defendants have not shown the delay was an intentional device to gain tactical advantage over them at their own trials.

The Court understands defense counsel's dilemma in this case, however. They are forced to speculate on actual prejudice in large part due to the fact they have little or no evidence regarding witnesses. There is the possibility that witnesses have become unavailable due to the delay. There is a remote possibility that, once counsel can identify and attempt to locate the witnesses, they may be able to meet their burden of showing actual prejudice  The Court therefore believes that Defendants' Motions to Dismiss should be denied, but that Defendants should be permitted to renew their motions should evidence hereafter received warrant reconsideration.

For all the above reasons, the undersigned finds because Defendants have  failed to meet their burden of proving that pre-indictment delay actually prejudiced their right to a fair trial, their Due Process claims also fail. The undersigned therefore **RECOMMENDS** Defendants' Motions to Dismiss be **DENIED without prejudice.**

## MOTIONS TO SUPPRESS

Defendant Young filed a Motion to Suppress Statements or, in the Alterative, Request for Additional Discovery. Defendant Palmer filed a Motion to Suppress Alleged Statement. All three defendants have joined in each other defendant's motions.

In his Motion, Defendant Young demands a more detailed account of the alleged oral statements given by him on or about November 3, 2006. He asserts that the police report contains

11

no specific quotes and that, apparently, no statements were recorded or memorialized in any fashion either audio, video, or in contemporaneous writing. Further, although the report references that Young was advised of his Miranda Rights, no documentation was provided to support such a representation. He therefore requests that such documentation be provided or that any alleged statements made by him absent a waiver of Miranda Rights be suppressed.

In response, the United States contends that on November 3, 2006, FBI Special Agent Ambrosini interviewed Young regarding the incident in question. The United States contends that prior to the interview SA Ambrosini informed Young of his Miranda rights, executed an Advice of Rights form, read each right to Young, and then Young acknowledged he understood the form and agreed to waive his Miranda rights. The United States provided a copy of the Advice of Rights form, signed by both SA Ambrosini and Defendant Young, and a Polygraph Report which memorializes the interview of Young on November 3, 2006.

Based upon the United States' response, Defendant Young conceded his Motion to Suppress is no longer viable. Based upon which, the undersigned finds Young's Miranda rights were not violated. Therefore, the undersigned **RECOMMENDS** Young's Motion to Suppress Statements or, in the Alternative, Request for Additional Discovery [Docket Entry 64] be **DENIED**.

Defendant Palmer asserts that he was interviewed on October 24, 2006, by FBI Special Agent DeVittis regarding the incident at issue in the Indictment. At that time Defendant made a statement which was transcribed and set forth in an affidavit to which the defendant placed his signature. Palmer notes that a report was provided of another alleged statement Palmer gave on October 30, 2006; however, no signed waiver of Miranda rights or any supporting documentation was provided for this alleged statement.

12

The United States avers that SA DeVitts' sole interview of Palmer took place on October 24, 2006; that the date of the interview as stated on the 498 form was simply incorrect; and that Palmer was, on October 24, 2006, advised of and agreed to waive his rights in writing.

Defendant's counsel agreed that the October 30th date was probably a mistake, but could not state that with certainty. Counsel suggested that if she had the notes of the actual interviews, the correct date might appear on those notes, mooting the issue. She concedes that Defendant did agree to the polygraph on October 24th.

In consideration of all which, the undersigned finds Palmer's <u>Miranda</u> rights were not violated. The undersigned therefore **RECOMMENDS** Palmer's Motion to Suppress Alleged Statement [Docket Entry 76] be **DENIED**.

Defendant Hackett did not file his own Motion to Suppress; however, he has joined in both other Defendants' motions. At the hearing, counsel acknowledged that, as in the other Defendants' cases, he had now been provided a copy of his waiver of rights.

Upon consideration of which, the undersigned finds Palmer's <u>Miranda</u> rights were not violated, and therefore **RECOMMENDS** any **Motion to Suppress** be **DENIED**.

## ORDER DECIDING ORAL MOTIONS FOR INTERVIEWER'S NOTES AND RAW DATA FROM POLYGRAPH EAXAMINER

Counsel for Defendants did orally move for the Government to provide Defendants' actual statements, recordings, tapes, or notes of their statements rather than just the summaries by the polygraph technician or agent. In response, the United States advised that no recordings or tapes of statements existed, but that agent interviews reduced to the forms 498 already produced. Counsel moved for production of the raw data from the polygraph as well as the raw agents' raw notes of

interviews.

### Agent's Interview Notes

The Court would not even consider the request for polygraph data and notes from interviews in the normal case. In this case, however, Defendants are charged with providing false information to law enforcement agents, based on statements they made to interviewers.

Any discussion of raw interview notes necessarily begins with Fed.R.Crim.P. 16(a)(1)(B)(ii) which provides in pertinent part: "Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent;...."

The advisory committee notes applicable to the 1991 Amendment provide some help in interpreting: "The amendment to Rule 16(a)(1)(A) expands slightly government disclosure to the defense of statements made by the defendant. The rule now requires the prosecution, upon request, to disclose any written record which contains reference to a relevant oral statement by the defendant which was in response to interrogation, without regard to whether the prosecution intends to use the statement at trial. The change recognizes that the defendant has some proprietary interest in statements made during interrogation regardless of the prosecution's intent to make any use of the statements... The introductory language to the rule has been modified to clarify that without regard to whether the defendant's statement is oral or written, it must at a minimum be disclosed. Although the rule does not specify the means for disclosing the defendant's statements, if they are in written or recorded form, the defendant is entitled to inspect, copy, or photograph them."

14

In <u>United States v. Mohammed Almohandis</u>, 307 F.Supp.2d 253, 257 (D. Mass. 2004) Magistrate Judge held "agents' rough notes of any interview of a defendant in circumstances in which the defendant, at the time of the interview knew that the interviewer was a government agent, are required to be produced under Rule 16(a)(1)(B)(ii), Fed.R.Crim.P., as a portion of any written record containing the substance of any relevant oral statement." In Magistrate Judge Collings' analysis, he cites a number of cases where the courts have denied production of the rough notes because the matter had been raised under 16(a)(1)(A) instead of 16(a)(1)(B)(ii) and no apparent consideration had been given to the impact of 16(a)(1)(B)(ii) on the issue.

In <u>United States v. Ferguson</u>, 478 F.Supp.2d 220, 238 (D.Conn. 2007) District Judge, after discussion of cases decided without reference to the enactment of or prior to the enactment of 16(a)(1)(B)(ii), held: Defendants charged with making false statements to Securities and Exchange Commission (SEC) and other crimes were entitled under the plain language of Rule 16(a)(1)(B)(ii) to the interview notes of the SEC agents since the interview notes requested were a written record containing the substance of any relevant oral statement made to the agent.

In <u>United States v. Grace</u>, 401 F.Supp.2d 1087, 1091 (D. Montana, Missoula Division 2005) Chief District Judge in conspiracy to violate clean air act, defraud US, wire fraud and obstruction of justice case held: "In the absence of clear Ninth Circuit authority to contravene that plain meaning , I find Rule 16(a)(1)(B)(ii) requires the production of rough interview notes containing the substance of relevant oral statements by the defendants, including qualifying agents of Defendant Grace under Rule 16(a)(1)( C ).

<u>United States v. Hinton</u>, 719 F.2d 711 (4th Cir. 1983) holding "investigative notes of government agent, made in course of interviewing witnesses, which were later incorporated into the

agent's formal report were not statements within meaning of the Jencks Act and, thus, Government's failure to produce the notes did not warrant suppression of agents testimony" is not applicable to the issue before this court for the following reasons: 1) <u>Hinton</u> involved trial court denial of suppression of an agent's rebuttal of a fact witness at trial based on his 302 interview notes of that witness's observations of one Defendant on the day of the robbery because the agent had disclosed the 302 but not retained or disclosed his rough interview notes; <u>Hinton</u> involved Jencks and not Rule 16(a)(1)(B)(ii); and <u>Hinton</u> decided prior to 1991 amendment to Fed.R.Crim.P 16(a)(1)(B)(ii).

United States v. Van Nguyen, 456 F.Supp.2d 1366-1367 (DCNDGeorgia 2006) District Judge overruled Magistrate Judge ruling requiring disclosure of rough notes of agents made of Defendants interview holding: the 1991 amendment to Fed.R.Crim.P. 16(a)(1)(B)(ii) was not intended to and did not make a radical change in the prior practice that rough interview notes of a government agent were not discoverable; that the Magistrate Judge misread the rule and assumed "any" meant "all" when he should have read it to mean "a" or "an"; the magistrate judge improperly ignored a prior circuit court binding ruling because it did not address the revised rule; and to require the agent to produce rough notes violated the advisory committee's recognition that the duty was of full disclosure which is satisfied by production of the summary report which contains everything in the rough notes.

 United States v. Muhammad, 120 F.3d 688 (7th Cir. 1997) held  failure of trial judge to order testifying FBI agent to product rough notes of interview notes in which Defendant made confession when 302 was produced containing same information and was used to refresh testifying agents recollections not error.  The Court citing other 7th Circuit cases held "Muhammad had no legal basis to compel the Government to produce Agent Gandolfo's original interview notes that were

16

subsequently incorporated into the FBI 302." *Id.* at 699. The Court seemed to focus on the fact that the District Judge reviewed the rough notes *en camera* and found them to contain substantially the same information as contained in the FBI 302 and the fact that the testifying agent was not the writer of the interview notes. *Id.* No mention was made of Fed.R.Crim.P. 16(a)(1)(B)(ii).

In United States v. Brown, 303 F.3d 582 (5th Cir. 2002) wherein Brown asserted alleged discrepancies between agent's interview notes and 302 were material to his theory that Agent had manufactured false statement charges Court held failure to require disclosure of the agent's interview notes was not abuse of discretion violation of Fed.R.Crim.P. 16(a)(1)(A), ( C ), the Jencks Act, or his rights under Brady v. Maryland, 373 U.S. 83, 87 (1963). The Court did not address F.R.Crim.P. 16(a)(1)(B)(ii). The Court's ruled: "Rule 16(a)(1)(A) does not grant a criminal defendant a right to preparatory interview notes where the content of those notes have been accurately captured in a type-written report, such as a 302, that has been disclosed to the defendant. The government satisfies its obligation under the rule when it discloses a 302 report that contains all of the information contained in the interview notes." *Id.* At 590.

The Sixth Circuit held Agent's rough notes of interview of defendant which was later summarized in formal report were "portion of ...written record containing the substance" of oral statement within rule governing disclosure obligation, were rough notes were only written notation indicating that defendant had given location of charged drug sales but the failure to disclose those rough interview notes containing corroborative inculpatory information from defendant pretrial was harmless error when they were produced during the trial as inculpatory statement, other independent evidence of defendant's presence at scene of same drug deals was overwhelming and defendant had ample evidence available to him prior to trial to make informed decision whether or not to plead

guilty. U.S. V. Clark, 385 F.3d 609 (6th Cir. 2004). While the Sixth Circuit held that Fed.R.Crim.P.

16(a)(1)(B)(ii) "requires the disclosure of 'the portion of any written record containing the substance'

of such an oral statement" thereby imposing "a more specific disclosure obligation than Rule

16(A)(1)(A) and Agent Poff's notes, by definition, constitute a portion of a written record containing

the substance of Defendant's interview" and should have been turned over on request, it concluded

there was no prejudice by turning them over during trial since the corroborative of inculpatory

evidence which Defendant had and could use to make a decision of whether to plead guilty or go to

trial. *Id.* at 619-620.

The within review reflects clear differences of opinion among the circuits and districts that

have addressed the issue of disclosure of an agent's notes since the adoption of the 1991 amendment

to F.R.Crim.P. 16(a)(1)(B)(ii). The undersigned has been unable to find and has not been directed

to any Fourth Circuit authority governing the issue. Notwithstanding those opinions and rulings of

circuits and districts to the contrary, the undersigned believes that in a case such as the instant case

where the Defendants are charged with lying to an agent based on the interviews with that agent the

better approach is to follow a literal interpretation of F.R.Crim.P. 16(a)(1)(B)(ii) and require

disclosure of the rough notes. In so ruling the undersigned favors the approach taken by the

Magistrate Judge, District Judge and Chief District Judge in United States v. Almohandis, *supra*,

United States v. Ferguson, *supra*, United States v. Grace, *supra*, and the reasoning in U.S. v. Clark,

*supra*, for disclosure under F.R.Crim.P. 16(a)(1)(B)(ii).

In reaching this conclusion, the undersigned finds relevant: 1) that Defendants have made a

specific request for the rough notes of interviews of each of them by investigators prior to

indictment; 2) Defendants were aware they were being interrogated by government agents at the time

of the interviews; 3) such interviews did take place; 4) those interviews and the statements made during them formed the basis for the summaries prepared and disclosed as part of discovery;  5) Defendants have no way to know if the summaries contain all of the information and are consistent with the information in the rough notes of interviews; 6) Defendants do not know if the rough notes contain the substance of any relevant oral statement because they have not seen the rough notes; 7) the information allegedly provided to the agent interviewers prior to indictment forms a significant part of the basis for the indictment charging lying to government agents and obstruction of justice; 8) and, since the rough notes predate the indictment, they were made incident to the interviews which are summarized, form the basis of some of the charges in the indictment, and are "any written record" and likely contain "reference to a relevant oral statement by the defendant that was in response to interrogation."  The undersigned further concludes disclosure of the rough notes of interviews of these defendants under the limited circumstances of this case does not mean they are admissible at trial.  It merely means the Defendants have a right to see them to make determinations whether the notes are substantially the same as the already disclosed formal reports or not and to put that information to use in the decision making process of whether to plead or go to trial. U.S. v. Clark, *supra*. The undersigned declines to take the approach of conducting an *en camera* review of the rough notes as was performed by the District Judge in United States v. Muhammad, *supra*.  The undersigned is not under the pressure of making a trial decision as was the District Judge in Muhammad.  Moreover, the undersigned does not have the luxury of the factual development the District Judge had during Muhammad's trail in order to make a determination the rough notes reviewed were substantially similar to those in the formal report and testified to during the agent's trial testimony.  The undersigned finds no evidence that requiring the production of the rough notes

of interviews of each of these three Defendants by government agents incident to the assault and death at Hazleton Penitentiary is burdensome as contemplated by the writers of the second paragraph of the Advisory Note to the 1991 Amendment to Rule 16.

The Court therefore **ORDERS** the United States to forthwith provide to Defendants' counsel "the portion of any written record[1] containing the substance of any relevant oral statement made" by a Defendant[2] "in response to interrogation by a person the defendant knew was a government agent." F.R.Crim.P. 16(a)(1)(B)(ii).  For docket entry purposes, Defendants' oral motion for production of rough notes of agent interviews of Defendants is **GRANTED.**

### Polygraph Raw Data

The Court  then inquired during the hearing of the AUSA appearing if he knew of any legal reason the Court should not also order the polygraph data be produced.  Mr. Flower responded that he was not aware of any.  The Court therefore directed Mr. Flower to provide to the Court by Wednesday, September 28, any legal reason why the polygraph data should not be produced. Defendants would then have until Friday, September 30, to provide legal basis for such production.

No authority relative to the issue of polygraph data production was supplied by the United States or by any of the Defendants.  Polygraph data is not admissible as evidence.  The data is not " any written record containing the substance of any relevant oral statement made" by a Defendant "in response to interrogation by a person the defendant knew was a government agent." There is no evidence before the undersigned that any of the polygraph data contained  any written record containing the substance of any relevant oral statement made" by a Defendant  "in response to

---

[1][rough notes of interviews]

[2]Hackett, Young, Palmer

20

interrogation by a person the defendant knew was a government agent." Accordingly, Defendants'

oral motion for production and inspection [discovery] of the raw data of the polygraph examinations

of Defendants is **DENIED**.

## RECOMMENDATION

Based on the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS**

that the Defendants' Motions to Dismiss [Docket Entries 63 and 75] be **DENIED without prejudice**

and their Motions to Suppress [Docket Entries 64 and 76] be **DENIED** as to all three defendants.

Any party may file, within fourteen (14) days after being served with a copy of this

Recommendation, with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such

objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.

Failure to timely file objections to the Recommendation set forth above will result in waiver of the

right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. §

636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208

(1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Order/Report and Recommendation

to counsel of record.

DATED: September 30, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

21